UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **NING YE,** ) | |
| ) | |
| **Petitioner,** ) | |
| ) | |
| v. ) | Civil Action No. 09-103 (ESH) |
| ) | |
| **ERIC H. HOLDER, JR.,** *et al.* ) | |
| ) | |
| **Defendants.** ) | |

## MEMORANDUM OPINION AND ORDER

Petitioner Ning Ye, an attorney proceeding *pro se*, has sued Attorney General Eric H. Holder, Jr., U.S. Marshal Richard Laskowski, Courtroom Deputy Carol Votteler, several unknown employees of this Court and the U.S. Department of Justice ("DOJ") ("the federal defendants"), and Maria Amato, general counsel for the District of Columbia Department of Corrections ("DOC"), for various torts and violations of his civil rights pursuant to 42 U.S.C. §§ 1981, 1982, 1983, 1985, and 1986; 18 U.S.C. §§ 241 and 242; and 28 U.S.C. § 1443. Plaintiff subsequently moved for default judgment against the federal defendants. The federal defendants have opposed that motion and have also moved to dismiss the case for insufficient service pursuant to Federal Rule of Civil Procedure 12(b)(5). Defendant Amato has moved to dismiss the claims against her pursuant to Rule 12(b)(6). For the reasons set forth below, plaintiff's motion for default will be denied and Amato's motion will be granted in part. The federal defendants' motion will be granted in part but plaintiff will be given twenty (20) days to serve a copy of the summons and complaint upon the U.S. Attorney for the District of Columbia in

1

accordance with Rule 4(i)(1)(A).

## BACKGROUND

According to the complaint, plaintiff previously represented criminal defendant Zhenli Ye Gon before Judge Emmet Sullivan in the case of *United States v. Gon*, No. 07-CR-181 (D.D.C.). (*See* Compl. at 2.) *See also* Minute Order, *Gon*, No. 07-CR-181 (D.D.C. May 7, 2008) (terminating plaintiff as Gon's counsel). Ye Gon was confined as an inmate at the District of Columbia Jail, run by the DOC, when plaintiff visited him there on February 18, 2008. (*See* Compl. 2, 4-5.) At that time, officials found chocolate candy in Ye Gon's possession after he had met with plaintiff; DOC officials concluded that plaintiff had impermissibly given the candy to Ye Gon. (*Id.* at 5.) The Court subsequently gave plaintiff a "stern warning" about the incident during a February 27 status conference in the *Gon* case. (*Id.*)

During a March 18 status conference in *Gon*, the Court considered questions surrounding the plaintiff's compliance with the requirements for admission to practice before this Court. (*See* Compl., Ex. 9 (1st Excerpt of Mar. 18, 2008 Hr'g Tr.).) The Court stated that plaintiff was not allowed to participate in the case until he was able to clarify his bar membership status. (*See id.*) The Court instructed plaintiff that he could "participate at counsel['s] table," but that he was not to "stand up" or address the Court. (*See* Compl., Ex. 10 (2nd Excerpt of Mar. 18, 2008 Hr'g Tr.).) Plaintiff alleges that during a break in the proceedings, after all defense counsel had left the courtroom, defendant Votteler took something from plaintiff's bag, which he suspects were two computer data storage devices. (Compl. at 6-7.) After the status conference resumed, plaintiff began to address the Court (*id.* at 8), leading the Court to admonish plaintiff several times more that he was not to move (*id.*), that he must "be quiet," and that he would be removed

from the courtroom "[t]he next time [he] stand[s] up . . . ." (Compl., Ex. 10.) Despite those instructions, plaintiff proceeded to reach into his bag, at which point the Court instructed the Marshals to escort the plaintiff out of the courtroom. (*See* Compl. at 8-9.) In the vestibule and area outside the courtroom, one of the Marshals allegedly knocked off plaintiff's eyeglasses, at which point plaintiff moved to retrieve his glasses. (*Id.* at 9.) According to plaintiff, the Marshals, including defendant Laskowski, then began to beat, kick, and choke plaintiff for "20 to 30 minutes" of "torture fueled by *clueless hatred*," after which they handcuffed plaintiff and restrained him in a cell for two hours. (*Id.* at 9-10 (emphasis in original).) Several months later, on October 23, a grand jury returned an indictment that charged plaintiff with assaulting, resisting, or impeding two U.S. Marshals in the performance of their official duties during the March 18 altercation. *See* Indictment, *United States v. Ye*, No. 08-CR-324 (D.D.C. filed Oct. 23, 2008). That same day, the DOJ issued a press release announcing the indictment and its allegations that plaintiff "inflicted bodily injury" on one of the Marshals and physically contacted another during the course of the altercation. (*See* Compl., Ex. 20.)

Plaintiff filed this action on January 16, 2009. The complaint contains ten counts: (1) assault and battery, (2) discrimination on the basis of race or national origin, (3) false arrest and false imprisonment, (4) malicious prosecution, (5) intentional infliction of emotional distress, (6) trespass to chattels and conversion, (7) defamation, (8) civil fraud, (9) civil conspiracy, and (10) negligent supervision. (Compl. at 13-19.) Defendant Amato moved to dismiss the counts against her on April 29. [Dkt. 3.] On May 27, the Court ordered plaintiff to file proof that he had served the federal defendants. (*See* Order [Dkt. 6] at 1.) On June 2, plaintiff filed a personal affidavit and affidavits by the process servers. [Dkt. 8-10.] On June 5, plaintiff moved for an

entry of default judgment against the federal defendants. [Dkt. 11.] On June 15, the federal defendants opposed the motion for default judgment and moved to dismiss the counts against them on the grounds of insufficient service. [Dkt. 17.]

## ANALYSIS

**I.      STANDARD OF REVIEW**

     **A.      Motion to Dismiss for Insufficient Service of Process**

"Before a federal court may exercise personal jurisdiction over a defendant, the procedural requirement of service of summons must be satisfied." *Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co., Ltd.*, 484 U.S. 97, 104 (1987). "If the plaintiff does not properly effect service on a defendant, then the defendant may move to dismiss the complaint" pursuant to Federal Rule of Civil Procedure 12(b)(5). *Hilska v. Jones*, 217 F.R.D. 16, 20 (D.D.C.2003). Upon such a motion, "'[t]he party on whose behalf service is made has the burden of establishing its validity when challenged; to do so, he must demonstrate that the procedure employed satisfied the requirements of the relevant portions of [Federal] Rule [of Civil Procedure] 4 and any other applicable provision of law." *Light v. Wolf*, 816 F.2d 746, 751 (D.C. Cir. 1987) (quoting C. Wright & A. Miller, Federal Practice and Procedure § 1083 at 334 (1969)); *accord Cruz-Packer v. Dist. of Columbia*, 539 F. Supp. 2d 181, 186 (D.D.C. 2008). Although "[p]ro se litigants are allowed more latitude than litigants represented by counsel to correct defects in service of process and pleadings," *Moore v. Agency for Int'l Dev.*, 994 F.2d 874, 876 (D.C. Cir. 1993), "this consideration does not constitute a license for a plaintiff filing *pro se* to ignore the Federal Rules of Civil Procedure," *Jarrell v. Tisch*, 656 F. Supp. 237, 239 (D.D.C. 1987), nor is it of much consolation to plaintiff, since he is a practicing attorney.

### B.     Motion to Dismiss for Failure to State a Claim

"In determining whether a complaint fails to state a claim, [courts] may consider only the facts alleged in the complaint, any documents either attached to or incorporated in the complaint and matters of which [courts] may take judicial notice." *E.E.O.C. v. St. Francis Xavier Parochial School*, 117 F.3d 621, 624 (D.C. Cir. 1997). When ruling on a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), courts may employ a "two-pronged approach." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009). Generally, "'a judge must accept as true all of the factual allegations contained in the complaint.'" *Atherton v. Dist. of Columbia Office of Mayor*, 567 F.3d 672, 681 (D.C. Cir. 2009) (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)) (edits omitted). However, courts "can choose to begin [considering a motion under Rule 12(b)(6)] by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal*, 129 S. Ct. at 1950. Courts need not accept as true "'naked assertion[s]' devoid of 'further factual enhancement,'" *id.* at 1949 (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 557 (2007)), or "legal conclusions cast in the form of factual allegations." *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994). In other words, a pleading must offer more than "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action' . . . ." *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 555).

Next, once it has been determined that "there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 129 S. Ct. at 1950. This means that

> a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

*Iqbal*, 129 S. Ct. at 1949 (internal quotation marks and citations omitted).

"A *pro se* complaint . . . 'must be held to less stringent standards than formal pleadings drafted by lawyers.'" *Atherton*, 567 F.3d at 681 (quoting *Erickson*, 551 U.S. at 94). "But even a *pro se* complainant must plead 'factual matter' that permits the court to infer 'more than the mere possibility of misconduct.'" *Id.* at 681-82 (quoting *Iqbal*, 129 S. Ct. at 1950). Moreover, as already noted, plaintiff is a practicing attorney so there is no reason to afford him the latitude ordinarily accorded to the typical *pro se* plaintiff.

## II. AMATO'S MOTION

### A. Counts VII and IX

Only Counts VII and IX specifically name Amato, alleging defamation and civil conspiracy, respectively.

#### 1. Defamation

The complaint alleges that on or about February 18, 2008, Amato defamed plaintiff to employees of this Court by spreading a "rumor in [the] form of gossip through unknown [e]x [p]arte communication channels" that plaintiff was a "'contraband smuggler'" and a "'security threat.'" (Compl. at 4-5.) However, plaintiff concedes that he has no basis for believing that Amato published *those* words at *that* time. (*See* Compl. at 5 ("All defamatory noise devised by [Amato] remains in *uncoded, gossip form without a drop of ink available to the accused*."

(emphasis added)).)  The allegations are therefore "'naked assertion[s]' devoid of 'further factual enhancement'" and cannot be presumed true.  *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 557).

Plaintiff also offers vague allegations that "through [I]nternet correspondence" with a "private party," Amato "libelously tarnished" him as a "'security threat[],'" a "'contraband smuggler,'" a "'liar,'" and an "'assailant attacking U.S. Marshals'" by spreading "such defamatory information all over, while knowing it untrue . . . ."  (Compl. at 17.)  Such allegations are not definite enough, on their own, to sustain his defamation claim because they do not identify the recipients of Amato's alleged publication.  *Cf. Messina v. Fontana*, 260 F. Supp. 2d 173, 177 & n.5 (D.D.C. 2003) (finding defamation complaint sufficiently definite under notice pleading standard where allegations identified, *inter alia*, the recipients and dates of the allegedly libelous communications).  The only "'factual enhancement'" for these assertions, *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 557), can be found in Exhibit 3 to the complaint, which purports to be email correspondence from October 2008 between Amato and David Zapp, plaintiff's former co-counsel in the *Gon* case,[1] who subsequently forwarded the emails to plaintiff.  (*See id.*, Ex. 3 (Amato-Zapp correspondence).)  Zapp wrote to Amato "on behalf of" plaintiff and noted that plaintiff had been prohibited from visiting his client at the D.C. Jail because "he passed a piece of candy to his client, apparently unaware that such a transfer of candy is unauthorized."  (*Id.* at 1.)  Zapp then inquired how plaintiff might regain his visiting privileges.  (*Id.*)  Amato responded: "It is not my decision.  The corrections experts have deemed him a *security risk*.  He *passed contraband*, *lied about it* and then treated the episode as

---

[1] *See* Notice of Attorney Appearance, *United States v. Gon*, No. 07-CR-181 (D.D.C. May

a joke, referring to it as chocolate-gate. He was *restrained in Court after assaulting US Marshals*. . . . The agency has determined that he cannot be allowed back in the facility." (*Id.* (emphases added).) Although Amato's email to Zapp does not contain the precise phrases alleged in the complaint, the Court will construe plaintiff's defamation claim as premised upon the actual language used in Amato's email.[2]

Under D.C. law, to establish a *prima facie* case for libel, a plaintiff must allege: "(i) a false and defamatory statement was written by the defendant about the plaintiff; (ii) the defendant published it without privilege to a third party; (iii) the defendant exhibited some fault in publishing the statement; and (iv) the statement is actionable as a matter of law or the publication has caused the plaintiff special harm." *Messina*, 260 F. Supp. 2d at 176-77; *see also Jankovic v. Int'l Crisis Group*, 494 F.3d 1080, 1088 (D.C. Cir. 2007). Plaintiff has not made out a *prima facie* for three of Amato's four statements that are at issue.

First, the complaint fails to allege the falsity of Amato's "security risk" comment. At best, the complaint alleges merely that plaintiff was not in fact a security risk, and that Amato knew this. (*See* Compl. at 17.) However, the complaint does not challenge the accuracy of Amato's actual statement: that corrections experts deemed plaintiff a security risk. Plaintiff effectively concedes the *fact* of this determination while disputing only its accuracy. (*See, e.g.*, Opp'n at 5-6 ("Government's 'experts believe" Plaintiff Ning Ye 'is a security risk' (?!) while knowing it is true or false? . . . From when, for why, on what basis, has this Plaintiff become a 'security risk' in the eyes of the U.S. law enforcement apparatus, reflected in Ms. Amato's and

---

1, 2008) (Dkt. 80).

[2] Amato appears to do the same. (*See, e.g.*, Amato's Mem. in Supp. of Mot. to Dismiss [Dkt. 3] at 4.)

her companions', if any, archives?  Any basis? Any basis?!" [*sic*]).)  Plaintiff therefore has not stated a claim that Amato's actual "security risk" comment was defamatory.

Second, plaintiff cannot allege the falsity of Amato's comment regarding "contraband," because that statement is true.  "Truth is an absolute defense to defamation claims."  *Benic v. Reuters America, Inc.*, 357 F. Supp. 2d 216, 221 (D.D.C. 2004); *Olinger v. American Sav. & Loan Ass'n*, 409 F.2d 142, 144 (D.C. Cir. 1969) ("Truth, of course, is a complete defense to a charge of libel.").  "This defense may be established by demonstrating that the statements in question are 'substantially true.'"  *Benic*, 357 F. Supp. 2d at 221 (quoting *Lohrenz v. Donnelly*, 223 F. Supp. 2d 25, 59 (D.D.C. 2002)).  "'Substantially true' means that the 'gist' of the statement is true or that the statement is substantially true, *as it would be understood by its intended audience*."  *Id.* (quoting *Moss v. Stockard*, 580 A.2d 1011, 1023 (D.C. 1990)) (emphasis added).

Plaintiff does not deny that he gave his client some candy, nor could he plausibly deny that this happened.  Exhibit 3 shows that Zapp, writing to Amato *on plaintiff's behalf*, was aware that plaintiff "passed a piece of candy to his client" without authorization.  (Compl., Ex. 3 at 1.)  Notably, plaintiff has not disavowed Zapp's statement about the candy.  Instead, plaintiff argues that candy is not "contraband" as defined in the encyclopedia or in popular parlance.  (Opp'n at 2-4.)  This is irrelevant.  What matters is that plaintiff's pleadings assert that DOC rules did not authorize plaintiff to give his client any candy.  (*See* Compl. Ex. 3 at 1 (Zapp's statement that

plaintiff was unaware that "such a transfer of candy is unauthorized").)³ By giving candy to his client, plaintiff gave a prisoner something that he was not authorized to give. Because Zapp's own emails make clear that he would have understood the gist of Amato's statement to be true, plaintiff's claim based on the contraband comment fails.

Third, Amato's comment that plaintiff was "restrained in Court after assaulting US Marshals" was not defamatory from the perspective of someone in Zapp's position. A statement is defamatory "if it tends to injure [] plaintiff in his trade, profession, or community standing," *Moss,* 580 A.2d at 1023, by making him "'appear odious, infamous, or ridiculous.'" *Klayman v. Segal*, 783 A.2d 607, 613 (D.C. 2001) (quoting *Howard Univ. v. Best*, 484 A.2d 958, 989 (D.C. 1984)). "The [C]ourt must determine as a threshold matter whether a statement is capable of being construed as defamatory." *Benic*, 357 F. Supp. 2d at 221. Here, the complaint alleges that plaintiff was restrained after an altercation with the Marshals. (*See* Compl. at 9-10.) Plaintiff therefore takes issue only with the phrase "assaulting." However, "in determining whether any publication is defamatory, 'the publication must be considered *as a whole*, in the sense it would be understood *by the readers to whom it was addressed*.'" *Heard v. Johnson*, 810 A.2d 871, 886 (D.C. 2002) (quoting *Best*, 484 A.2d at 989) (emphases added); *accord Benic*, 357 F. Supp. 2d at 221. The word "assaulting," as used in Amato's letter to Zapp, "may not be isolated and

---

³ The Court also takes judicial notice of the fact that when plaintiff gave his client the candy, DOC regulations prohibited attorneys who were visiting clients from giving anything, even legal documents, to prisoners. *See, e.g.*, *American Farm Bureau v. U.S. E.P.A.*, 121 F. Supp. 2d 84, 106 (D.D.C. 2000) (taking judicial notice of federal agency policies printed in Federal Register). According to DOC Program Statement ("PS") 4160.3D, effective March 31, 2005 through February 28, 2008, attorneys were prohibited "from giving an inmate *any* item, including legal documents." DOC PC 4160.3D at 20 ¶ 19(d)(2) (emphasis added), *available at* http://doc.dc.gov/doc/frames.asp?doc=/doc/lib/doc/program_statements/4000/pm_4160.3d_ attorney-client_relationship_(final_4-11-05).pdf.

then pronounced defamatory, or deemed capable of a defamatory meaning." *Klayman*, 783 A.2d at 614. Rather, the Court must "'examine the statement in its totality in the context in which it was . . . published" and "'consider all the words used, not merely a particular phrase or sentence.'" *Id.* (quoting *Foley v. Lowell Sun Publ'g Co.*, 533 N.E.2d 196, 197 (1989)). Thus, the Court must consider Amato's entire letter. *See Heard*, 810 A.2d at 886 (rejecting plaintiff's "impl[ication] that the court should not consider the [publication] as a whole, but only those statements" that plaintiff deemed defamatory). Amato and Zapp, both attorneys, were discussing why plaintiff was not permitted to visit his and Zapp's mutual client in the D.C. Jail. A reasonable reader in Zapp's position and circumstances would have understood that Amato's letter, as a whole, was explaining that plaintiff was deemed a security risk in light of, among other things, his altercation with and subsequent restraint by U.S. Marshals. That reasonable reader would also have understood the comment about "assaulting" as referring to the Marshals' reasons for restraining plaintiff, which in turn was a reason why he was denied jail visitation privileges. *Cf. Washburn v. Lavoie*, 357 F. Supp. 2d 210, 215-16 (D.D.C. 2004) (finding that defendants' letter which accused plaintiff of engaging in illegal conduct was not capable of defamatory meaning, especially given that the letter's recipients were "well aware of the running dispute between the parties"). Accordingly, Amato's statement in question was not defamatory.[4]

As for Amato's statement that plaintiff "lied about" passing contraband, the Court can

---

[4] In the alternative, the Court would conclude for similar reasons that the gist of Amato's statement about "assaulting" was substantially true as Zapp would have understood it. A reasonable reader in Zapp's position would have attributed the same meaning to Amato's comments about why plaintiff had been denied visitation privileges regardless of whether she had written "assaulting" or "allegedly assaulting." *Cf. Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496, 517 (1991) ("[A] statement is not considered false unless it 'would have a different effect on the mind of the reader from that which the pleaded truth would have

find nothing in the complaint or Exhibit 3 that would suggest that this statement was not defamatory or false as understood by someone in Zapp's position.  *Cf. Moldea v. New York Times Co.*, 15 F.3d 1137, 1144 (D.C. Cir. 1994) ("The bald statement 'Jones is a liar,' for example, would plainly fall within the class of factual defamatory statements.").  Because Amato fails to address this statement, her motion to dismiss the defamation claim is denied as to this portion of Exhibit 3.

    **2.**    **Civil conspiracy**

Count IX's civil conspiracy claim, presumably pursuant to 42 U.S.C. § 1985, must be dismissed.  Plaintiff alleges that Amato engaged in a "smear campaign tarnishing the Plaintiff as 'contraband smuggler', security threats' to the United States [*sic*] . . . ."  (Compl. at 19.)  "Among other things, section 1985 plaintiffs must allege the elements of civil conspiracy, including: 'an agreement to take part in an unlawful action or a lawful action in an unlawful manner.'"  *Barr v. Clinton*, 370 F.3d 1196, 1200 (D.C. Cir. 2004) (quoting *Hall v. Clinton*, 285 F.3d 74, 83 (D.C. Cir. 2002).  Plaintiff makes only the conclusory allegation that Amato and the other defendants were "acting apparently in an unwritten agreement, meeting of minds, to commit [] serious civil rights offense[s] . . . ."  (Compl. at 19.)  Plaintiff's "bare assertion[]" about an unwritten agreement is a legal conclusion that, "much like the pleading of a conspiracy in *Twombly*, amount[s] to nothing more than a 'formulaic recitation of the elements'" of a civil conspiracy claim.  *Iqbal*, 129 S. Ct. at 1951 (quoting 550 U.S. at 555).  Count IX will be dismissed as to all defendants.

---

produced.'" (quoting R. Sack, Libel, Slander, and Related Problems 138 (1980)).

### B.     The Remaining Counts and Claims

As an initial matter, plaintiff asserts that his claims are based in part upon 28 U.S.C. § 1443, which governs the removal of civil rights actions from state to federal court, and 18 U.S.C. §§ 241 and 242, which are criminal statutes. Amato correctly notes that neither the venue nor criminal statutes provide private causes of action. *See, e.g.*, *Owens v. Dist. of Columbia*, No. 08-CV-2029, 2009 WL 1916280, at *5 (D.D.C. July 6, 2009) (dismissing claims under 18 U.S.C. §§ 241 and 242 and citing D.C. Circuit cases). In addition, although plaintiff invokes 42 U.S.C. § 1982, which prohibits racial discrimination in the enjoyment of the right "to inherit, purchase, lease, sell, hold, and convey real and personal property," the complaint contains no allegations that would support a claim under § 1982. Any of plaintiff's claims that are premised on any of these statutes must be dismissed with prejudice as to all defendants.

Plaintiff also relies upon 42 U.S.C. § 1986, presumably in support of Count X's claim of "negligence in supervision." A claim under § 1986 requires that plaintiff state a valid claim under § 1985. *See Thomas v. News World Commc'ns*, 681 F. Supp. 55, 72 (D.D.C. 1988). As discussed, plaintiff does not state a valid claim for relief under § 1985 and therefore cannot make out a claim pursuant to § 1986. *See id.*; *McManus v. Dist. of Columbia*, 530 F. Supp. 2d 46, 76 (D.D.C. 2007). Any claims premised on § 1986, including Count X, will be dismissed as to all defendants.

Finally, Counts I, II, III, IV, V, VI, and VIII do not name Amato. Nor do they describe conduct related to Amato's alleged participation in a smear campaign against plaintiff. Therefore, they must be dismissed as to Amato because they do not "plead[] factual content that allows the court to draw the reasonable inference that [Amato] is liable for the misconduct

alleged." *Iqbal*, 129 S. Ct. at 1949.

### III.     THE FEDERAL DEFENDANT'S MOTION

"A summons must be served with a copy of the complaint." Fed. R. Civ. P. 4(c)(1). In order to have properly served the federal defendants in either their official *or* individual capacities, plaintiff must have also served the United States. *See* Fed. R. Civ. P. 4(i)(2) & (3). Plaintiff must have served the United States by, *inter alia*, (1) delivering a copy of the summons and complaint to the U.S. Attorney for the District of Columbia (or the Assistant U.S. Attorney or the clerical employee designated by the U.S. Attorney in a writing filed with this Court's Clerk), or (2) sending a copy of the summons and complaint by registered or certified mail to the civil process clerk at the U.S. Attorney's Office for the District of Columbia ("USAO-DC"). *See* Fed. R. Civ. P. 4(i)(1)(A).

The federal defendants contend that plaintiff has failed to effect proper service on the United States by serving a copy of the summons and complaint on the U.S. Attorney. (*See* Fed. Defs.' Mot. to Dismiss ["Fed. Defs.' Mot."] [Dkt. 17] at 5.) They have submitted a declaration from Gary Nails, an employee with the USAO-DC whose responsibilities include docketing the receipt of civil summonses and complaints. (*See id.*, Decl. of Gary Nail ["Nails Decl."] ¶ 1.) Based on his review of the records of all service of process received by the USAO-DC, Nail attests that the office has not received service of a both a complaint *and* a summons in this matter, nor have copies of the complaint forwarded to the USAO-DC by the Department of Justice been accompanied by a summons. (*See id.* ¶¶ 4-9.)

There is no indication that plaintiff ever served *the United States* by delivering the necessary documents to the U.S. Attorney for the District of Columbia. Plaintiff has filed a

14

personal "affidavit of service" in which he attests that "he has caused to duly serve" the federal defendants "by personal service . . . via private process servers." (Pl.'s Aff. of Service [Dkt. 8] at 1.) This is not competent proof of service because such proof must be made by affidavit of the server. *See* Fed. R. Civ. P. 4(l)(1).

Plaintiff's affidavit is accompanied by four affidavits by the individual process servers; the only reference to the U.S. Attorney for the District of Columbia comes in an affidavit by Joel Wishengrad which attests that on January 21, 2009, he served former Attorney General "Michael Mukasey c/o US Attorney Office [*sic*]" at "3rd Street N.W. US Attorney Office [*sic*]"[5] by serving a "Clerk" with a summons and complaint in this matter. (*See* Pl.'s Aff. of Service, Attachment 3 (1st Aff. of Joel Wishengrad, Jan. 21, 2009).) A second affidavit by Wishengrad, submitted with plaintiff's opposition to the federal defendants' motion, confirms that these documents were served to "[d]efendant Michael Mukasey" and not to the United States, nor to the attention of the U.S. Attorney for the District of Columbia. (*See* Pl.'s Mem. in Supp. of Opp'n to Fed. Defs.' Mot. [Dkt. 21], Ex.1 (2nd Aff. of Joel Wishengrad, Jan. 21, 2009) at 1.) Plaintiff has thus failed to prove that he ever properly served the United States.[6]

Plaintiff must effectuate proper service of the summons and complaint on the United

---

[5] Notably, this address is inconsistent with the USAO-DC address where plaintiff attested that Wishengrad served the documents. (*See* Pl.'s Mot. for Entry of Default Judgment [Dkt. 11] at 4 (plaintiff's affidavit that Wishengrad served Mukasey, care of USAO-DC, at "555 4th Street, NW").)

[6] Even if the Court were to construe the documents served on former Attorney General Mukasey as documents served on the United States, there is no proof that they were delivered to the U.S. Attorney for the District of Columbia in compliance with Rule 4, because there is no indication that the "[c]lerk" at the USAO-DC with whom Wishengrad left the documents was the "clerical employee whom the United States attorney designate[d] in a writing filed with" this Court's Clerk. Fed. R. Civ. P. 4(i)(A)(i).

States in accordance with Federal Rule of Civil Procedure 4(i)(1)(A). That is, plaintiff must either deliver a copy of the summons and complaint to the U.S. Attorney for the District of Columbia (or to an Assistant U.S. Attorney or clerical employee whom the U.S. Attorney has designated in a writing filed with this Court's Clerk) or send a copy of the summons and complaint by registered or certified mail to the civil-process clerk at the USAO-DC.[7] Plaintiff shall file a proof of service on or before September 2, 2009; if he fails to do so, the remaining claims and counts against the federal defendants will be dismissed.

## IV. PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT

A default judgment may only be entered against the United States or its officers "only if the claimant establishes a claim or right to relief by evidence that satisfies the court." Fed. R. Civ. P. 55(d). Given plaintiff's failure to properly serve the federal defendants, he is not entitled to the requested relief and his motion for default judgment will be denied.

## CONCLUSION

For the foregoing reasons, it is hereby **ORDERED** that:

- with respect to all defendants, plaintiff's claims pursuant to 18 U.S.C. §§ 241 and 242; 28 U.S.C. § 1443; and 42 U.S.C. § 1982 are dismissed with prejudice, while Counts IX and X and plaintiff's claims pursuant to 42 U.S.C. §§ 1985 and 1986 are dismissed without prejudice; and

- with respect to defendant Amato, all remaining claims and counts except Count

---

[7] The Court's order only requires plaintiff to take further steps in accordance with Rule 4(i)(1)(A). Although service on the United States also requires that plaintiff send a copy of the summons and complaint "by registered or certified mail to the Attorney General of the United States at Washington, D.C.," Fed. R. Civ. P. 4(i)(1)(B), the federal defendants do not argue that plaintiff failed to comply with this requirement.

VII are dismissed without prejudice, while Count VII is dismissed with prejudice except for plaintiff's claim based on Amato's alleged statement in Exhibit 3 to the complaint that plaintiff "lied about" giving candy to his client at the D.C. Jail.

It is **FURTHER ORDERED** that:

- Amato's motion to dismiss [Dkt. 3] is **GRANTED IN PART AND DENIED IN PART**;

- the federal defendants' motion to dismiss [Dkt. 17] is **GRANTED IN PART** but plaintiff is required to serve a copy of the summons and complaint on the United States in accordance with Federal Rule of Civil Procedure 4(i)(1)(A) by either delivering a copy of the summons and complaint to the U.S. Attorney for the District of Columbia (or to an Assistant U.S. Attorney or clerical employee whom the U.S. Attorney has designated in a writing filed with this Court's Clerk) or sending a copy of the summons and complaint by registered or certified mail to the civil-process clerk at the USAO-DC. Plaintiff shall file a proof of service on or before September 2, 2009; if he fails to do so, the remaining claims against the federal defendants will be dismissed.

- plaintiff's motion for entry of default judgment [Dkt. 11] is **DENIED**;

- plaintiff's motion to strike [Dkt. 5] is **DENIED**;

- plaintiff's motion to amend [Dkt. 23] is **GRANTED**; and

- Amato's motion to strike [Dkt. 24] is **GRANTED**.

**SO ORDERED.**

/s/
ELLEN SEGAL HUVELLE
United States District Judge

DATE:   August 13, 2009